IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NANCY BLANTON CARLEY, | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-CV-1165-BJ |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nancy Blanton Carley ("Carley"), proceeding *pro se*, seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. For the reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

## I.    STATEMENT OF THE CASE

Carley filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for divorced spouse insurance benefits. In July 2019, Carley protectively filed for retirement insurance benefits and divorced widow's insurance benefits ("DWIB") on the earnings record of her deceased ex-husband, Clyde R. Blanton ("Blanton"). (Transcript ("Tr.") 11; *see* Tr. 22, 161-64.) The Commissioner awarded Carley retirement insurance benefits effective March 2019, the date she attained full retirement age with a date of birth of March 27, 1953 (Tr. 11; *see* Tr. 22-23, 162), but denied Carley's initial application for DWIB based on a determination that the length of marriage failed to meet the durational requirements. (Tr. 11; *see* Tr. 23, 36-38.) On reconsideration

of Carley's application for DWIB, she produced evidence establishing that she had been married twice to Blanton and, thus, met the durational requirements. (Tr. 11; *see* Tr. 23.) On September 4, 2021, Carley received a Notice of Award that indicated she was entitled to DWIB but her benefits were being reduced to $0.00 based on the government pension offset ("GPO").[1] (Tr. 47-49.)

Subsequently, on September 8, 2021, Carley requested a hearing before an ALJ. (Tr. 52-53.) On March 2, 2022, the ALJ dismissed the request for a hearing, finding that Carley did not have a right to a hearing since there was no indication in the record that a reconsideration determination had been made. (Tr. 33.) On December 19, 2022, the Appeals Council, finding Carley had the right to a hearing, remanded the case to the ALJ to make a determination of "whether the claimant's surviving divorced spouse's insurance benefits are subject to reduction due to the government pension offset because of the pension the claimant receives based on her own work." (Tr. 34.)

On June 27, 2023, the ALJ held an online hearing, and, on August 18, 2023, found that Carley was subject to the GPO and that she did not meet an exemption. (Tr. 11-16; *see* Tr. 21-27.) Carley then filed a request for review of the ALJ's decision to the Appeals Council. (Tr. 5.) On December 11, 2023, the Appeals Council denied Carley's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6-7.) Carley subsequently filed this civil action seeking review of the ALJ's August 2023 decision.

## II.    ISSUE

In her brief, Carley asserts one issue—whether the ALJ erred in finding that she did not qualify for an exemption to the GPO. (Plaintiff's Brief—Court Review for Surviving Spouses' [*sic*] Disability Insurance Benefits ("Pl.'s Br.") [doc. 15] at 2.)

---

[1] The GPO reduces a DWIB applicant's benefits when the applicant is already receiving federal pension benefits for non-covered work. *See* 20 C.F.R. § 404.408a.

### III.   STANDARD OF REVIEW

In reviewing the Commissioner's denial of disability benefits the Court's review is "exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, [when considering the record as a whole,] and whether the ALJ applied the proper standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam); *Legett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *see Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam).  Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In this context, substantial evidence is "more than a mere scintilla of evidence, but less than a preponderance." *Ripley v. Chater*, 67 F.3d 553, 555 (5th Cir. 1995) (internal citations omitted).  A finding of no substantial evidence is appropriate only if no credible evidentiary sources or medical findings support the decision.  *See Boyd*, 239 F.3d at 704.  While the court shall scrutinize the record to determine whether substantial evidence is present, "the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment" for that of the Commissioner's. *Sweeten v. Astrue*, No. 3:11-CV-934-G (BH), 2012 WL 3731081, at *6 (N.D. Tex. Aug. 13, 2012) (citation omitted), *report & recommendation adopted*, 2012 WL 3735884 (N.D. Tex. Aug. 29, 2012); *see Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. Additionally, "the claimant bears the burden of proof in establishing her entitlement to widow's benefits."   *Gonzalez v. Saul*, No. 7:19-cv-00029, 2019 WL 8329331, at *3 (S.D. Tex. Aug. 21, 2019) (citing *Deters v. Sec. of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)), *report & recommendation adopted*, 2020 WL 1505725 (S.D. Tex. Mar. 30, 2020).

## IV.  ALJ DECISION

As set forth above, in a decision dated August 18, 2023, the ALJ concluded that Carley was subject to the GPO and she did not qualify for an exemption.  (Tr. 1-16.)  The sole issue addressed by the ALJ was "whether the claimant's surviving divorce spouse's insurance benefits were subject to reduction due to the government pension offset because of the pension the claimant received based on her work."  (Tr. 13.)  First, the ALJ determined that the only pension Carley received based on her own Federal, State, or local government employment was her teacher pension.  (Tr. 14.)  As to her teacher's pension, the ALJ further determined that, based on Carley's own admissions and the evidence of record, she was not entitled to or eligible to receive the pension prior to July 1, 1983.  (*Id.*)  Next, the ALJ considered whether the pensions that Carley received based on Blanton's social security benefits and/or veteran's administration ("VA") benefits established an exemption to the GPO.  (Tr. 15.)  The ALJ found that, because the receipt of Blanton's social security and VA benefits was not based on her own Federal, state, or local government employment, Carley's receipt of these benefits did not entitle her to an exemption from the GPO.  (*Id.*)  Accordingly, the ALJ found that Carley was subject to the GPO on her application for DWIB and she did not meet the exemption.  (Tr. 16.)

## V.  DISCUSSION

As stated above, it is undisputed that Carley is entitled to DWIB.  (Tr. 47; Defendant's Brief ("Def.'s Br.") [doc. 21] at 4.)  The sole issue to be resolved is whether the ALJ erred in finding she did not qualify for an exemption to the GPO.

### A.  <u>Blanton's VA and Social Security Benefits</u>

In her brief, Carley argues, *inter alia*, that the ALJ erred in finding that her receipt of a pension from the VA and social security disability benefits, both on behalf of Blanton, did not

qualify as an exemption from the GPO.  (Pl.'s Br. at 2.)  Specifically, Carley alleges that she qualifies for an exemption because she "received a veterans disability pension from [the VA] for veterans and dependents not based on my spouses' [*sic*] earnings but based on [my] spouse being 100% disabled from 1977 to 1983."  (*Id.*) Carley also states that she "received Social Security Title I bene[]fits based on his disability from 1978 to 1981."  (*Id.*)

In response, the Commissioner argues that "the ALJ addressed [Carley's] arguments in his decision and properly found that her receipt of VA benefits or Social Security benefits based on her husband's disability did <u>not</u> qualify as an exception/exemption for a government pension offset."  (Def.'s Br. at 5 (emphasis in original).)  In support, the Commissioner argues that the definition of "government pension," as defined in 20 C.F.R. § 404.408a(a)-(b) and as properly utilized by the ALJ, "requires the monthly periodic benefit be based on Plaintiff's own Federal, State or local employment, [and, thus[,] Plaintiff's receipt of benefits from the VA or Social Security based on her husband's disability would not qualify as an exemption."  (Def.'s Br. at 6.)

The Social Security Act ("SSA") specifies the persons who are entitled to DWIB.  *See* 42 U.S.C. § 402(e)(1).  "When the government pension offset applies, a claimant's social security benefits are reduced each month, but not below zero, by an amount equal to two-thirds of the amount of any government pension that is payable to the claimant for the month."  *Segura v. Astrue*, No. SA-07-CV-0217 FB (NN), 2008 WL 2066037, at *3 (W.D. Tex. May 12, 2008) (internal quotation marks and footnote omitted).  However, the GPO does not apply, as relevant here, if a DWIB applicant

> were receiving or were eligible . . . to receive a Government pension for one or
> more months before July 1983, and [ ] meets the dependency test of one-half
> support that was applied to [applicants] for husband's and widower's benefits in
> 1977, even though [the applicant doesn't] claim benefits, and [ ] [doesn't] actually
> meet the requirements for receiving benefits until a later month. . . .

20 C.F.R. § 404.408a(b)(3).  The SSA defines "government pension" to refer to "any monthly periodic benefit (or equivalent) you receive that is based on *your* Federal, State, or local government employment."  *Id.* § 404.408a(a)(i) (emphasis added).

In this case, Carley presented her arguments to the ALJ that her receipt of Blanton's VA and Social Security benefits entitled her to an exemption from the GPO.  (Tr. 24-25.)  The ALJ considered Carley's arguments, as evidenced in his opinion, but found that the "government pension" definition explicitly refers to a pension based on a claimant's own employment and that Carley's receipt of Blanton's VA and Social Security benefits were not based on her own employment.  (Tr. 15-16.)  While Carley takes issue with the ALJ's decision, she cites no authority to show that a "government pension," as used in the SSA, has been interpreted beyond its explicit definition to include benefits not based on a claimant's own employment.  The definition of "government pension" is unambiguous and clearly refers to benefits that a claimant receives based on his or her own employment.  Carley's receipt of Blanton's VA and Social Security benefits are not based on her own employment and, thus, the ALJ did not err in finding that these did not meet the definition of a "government pension" or qualify her for an exemption from the GPO.  Therefore, substantial evidence supports the ALJ's determination that Carley did not qualify for an exemption from the GPO based on her receipt of Blanton's VA and Social Security benefits.

**B.    Carley's Teacher's Pension**

In her brief, Carley argues, for the first time, that her teacher's pension from the Teacher Retirement System of Texas (hereinafter "TRS pension") qualifies her for an exemption from the GPO.  (Pl.'s Br. at 2.)  Specifically, Carley claims that she was mistaken in believing that she was not eligible for her TRS pension, when in fact she was eligible to receive her pension vested after five years.  (Pl.'s Br. at 9.)  In response, the Commissioner alleges that, "[i]n her request for a

hearing and at the hearing, [Carley] did not argue that her TRS pension qualified as an exception to a government pension offset" and "the ALJ properly found that this pension did not qualify as an exception based on the evidence available at the administrative level." (Def.'s Br. at 5-6.) Further, the Commissioner argues that Carley's argument that she was entitled to receive her TRS pension is without merit because "[w]hile vesting may be a milestone on the road of retirement, it does not establish that [Carley was] eligible to receive a retirement pension." (Pl.'s Br. at 7.)

As recognized by the Commissioner, the ALJ relied on Carley's own admission that she was not entitled to her TRS pension prior to 1983. (Tr. 14.) Further, she provided no evidence to establish that her TRS pension entitled her to an exemption from GPO. Ultimately, it is her burden to show that she is entitled to benefits and that an exemption applies. *See Gonzalez*, 2019 WL 8329331, at *3. Here, she failed to meet her burden and, because the ALJ was permitted to rely on Carley's statements and the evidence within the administrative record, the ALJ did not err in finding that her TRS pension did not qualify as an exemption from GPO.

Furthermore, even if Carley had provided the ALJ with the evidence now before the Court, her argument would still fail. The brunt of Carley's argument is that her TRS pension vested in 1981 and she was eligible to receive the pension at the time it vested.[2] (Pl.'s Br. at 9.) However, as identified by the Commissioner, the vesting of benefits is just one requirement that Carley must satisfy to be eligible for benefits. The evidence Carley attaches to her brief indicates that age is also a requirement that Carley must satisfy to be eligible to receive her TRS pension. (Pl.'s Br. at Exhibit ("Ex.") 2.) She also recognizes this age requirement throughout her opening brief and in her reply, stating that teachers "who have at least five years of membership service credit are

---

[2] Carley relies on the same GPO exemption set forth above, which provides an exemption for individuals who were eligible to receive a government pension before 1983. *See* 20 C.F.R. § 404.408a(b)(3).

eligible to retire and receive a lifetime monthly annuity when they meet the applicable age requirement." (Plaintiff's Reply ("Pl.'s Reply") [doc. 22] at 3 (emphasis omitted).)[3] To be eligible to receive the TRS pension, the retirement age, as indicated by Carley, is fifty-five years old. (Pl.'s Reply at 3.) As Carley would have been roughly twenty-eight years old in 1981,[4] it is clear that she would not have been eligible to receive her TRS pension that year or any time before 1983. Thus, even if Carley had provided this evidence to the ALJ to consider, the ALJ would not have erred in his determination that she was not entitled to her TRS pension before 1983.

Consequently, for the reasons stated above, the ALJ's determination that Carley did not qualify for an exemption from GPO is supported by substantial evidence. Consequently, remand is not required.

## VI.   CONCLUSION

Based on the foregoing, the ALJ's decision is **AFFIRMED** in all respects.

SIGNED August 22, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

---

[3] In her reply brief, Carley argues for the first time that she would have been entitled to her TRS pension under the Employee Retirement Income Security Act of 1974 ("ERISA") and, thus, qualified for an exemption from the GPO. (Pl.'s Reply at 5-8.) However, a reply brief is not an appropriate place to raise new arguments. *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.") (citing *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008)); *see also Hardman v. Colvin*, 820 F.3d 142, 152 (5th Cir. 2016) (per curiam) (nothing that courts "ordinarily do not consider claims raised for the first time in a reply brief") (internal quotation marks and citation omitted). Therefore, the Court will not address Carley's ERISA argument.

[4] Carley's date of birth is March 27, 1953. (Tr. 11.)